**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Judge William J. Martínez**

Civil Action No. 13-cv-2647-WJM-CBS

THERESA BERRY,

      Plaintiff,

v.

BRANDON BEAUVAIS,
CHAD GARCIA, and
JOHN DOES 1-3,

      Defendants.

---

**ORDER GRANTING DEFENDANTS'S MOTION FOR SUMMARY JUDGMENT**
**IN PART AND DENYING IN PART**

---

      Theresa Berry ("Berry") sues two Pueblo police officers, Brandon Beauvais

("Beauvais") and Chad Garcia ("Garcia") (together, "Defendants"), under 42 U.S.C.

§ 1983, claiming that Beauvais and Garcia had a duty to intervene to prevent a third

officer (not a defendant here) from committing an illegal seizure of Berry, and from

applying excessive force during that seizure.  (ECF No. 1.)

      Before the Court is Defendants' Motion for Summary Judgment.  (ECF No. 37.)

For the reasons stated below, the Court grants summary judgment as to whether

Defendants could have intervened in the allegedly illegal seizure, but denies summary

judgment on the question of whether Defendants had a realistic opportunity to intervene

in the alleged excessive force.

## I.  LEGAL STANDARD

      Summary judgment is warranted under Federal Rule of Civil Procedure 56 "if the

movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–50 (1986).  A fact is "material" if, under the relevant substantive law, it is essential to proper disposition of the claim.  *Wright v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231–32 (10th Cir. 2001).  An issue is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party.  *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997).

In analyzing a motion for summary judgment, a court must view the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party.  *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).  In addition, the Court must resolve factual ambiguities against the moving party, thus favoring the right to a trial.  *See Houston v. Nat'l Gen. Ins. Co.*, 817 F.2d 83, 85 (10th Cir. 1987).

## II.  FACTS

The parties do not dispute the following facts unless otherwise noted.

## A.    Berry's Initial Encounter with the Police

On October 4, 2011, Berry and her son, Anthony Porco, purchased brake fluid from a convenience store in Pueblo.  (Defendants' Statement of Undisputed Material Facts ("Defendants' Facts") (ECF No. 37 at 2–5) ¶ 4; Plaintiff's Response to Movant's Material Facts ("Plaintiff's Response") (ECF No. 42 at 1–5) ¶ 4.)  Following this purchase, Berry and Porco went outside and were standing near Berry's car when

Garcia approached Porco.  (*Id*.)  Garcia believed that Porco matched the description of

an armed robbery suspect.  (*Id*.)

Soon after Garcia made contact with Porco, Beauvais arrived to back up Garcia.

(Defendants' Facts ¶ 5; Plaintiff's Response ¶ 5.)  Beauvais stood next to Garcia while

Garcia questioned Porco.  (*Id*.)

As Beauvais was arriving and walking up to Garcia, a third Pueblo police officer

arrived, Detective Stephen Jesik ("Jesik").  (Defendants' Facts ¶¶ 6–7; Plaintiff's

Response ¶¶ 6–7.)  Jesik intended to provide additional backup to Garcia by ensuring

that the surroundings were safe.  (*Id*.)

The parties agree that Berry was "in the same area" as Porco, Garcia, Beauvais,

and Jesik.  (Defendants' Facts ¶ 8; Plaintiff's Response ¶ 8.)  Berry testified that she

was leaning up against the driver's side of her car, about ten feet away from Garcia and

Porco.  (ECF No. 42-1 at 109:21–23.)  Beauvais testified that Berry's car was 10–20

feet away from Garcia and Porco.  (ECF No. 37-2 at 40:25–41:2.)  Porco believed that

the car was "5, 10 feet" away.  (ECF No. 37-5 at 44:23–24.)

Regardless, Defendants claim that, as Garcia questioned Porco, Berry "was

becoming highly agitated and verbally belligerent, which led to Officer Garcia being

distracted in his contact with Mr. Porco."  (Defendants' Facts ¶ 8.)  Berry disputes that

she "was becoming highly agitated and verbally belligerent" at this time.  (Plaintiff's

Response ¶ 8.)  In either event, the parties agree that Jesik at some point asked for

Berry's name but she refused to give it.  (Defendants' Facts ¶ 9; Plaintiff's Response

¶ 9a.)

3

**B.     Berry's Account of Her Detention and Treatment**

At this point, the parties' stories diverge significantly.  According to Berry, Jesik "started peeking and reaching . . . into [her] car[]," and "she told him, in a raised but not aggressive voice, 'That's illegal.  You can't do that.  I am not involved in this.  Don't do that.'"  (Plaintiff's Response ¶ 8.)  Jesik then "'snickered.  And he reached back in [to Berry's car].'"  (*Id.*)  Berry again told Jesik to stop reaching into her car.  (*Id.*)  Berry "was angry with Jesik now but she did not raise her voice."  (*Id.*)

Porco agreed that his mother "was not yelling when Jesik was looking in her car." (*Id.*)  Porco further stated that Berry told Jesik that "he [Jesik] needed a warrant" to search Berry's car.  (Plaintiff's Statement of Additional Disputed Facts ("Plaintiff's Additional Facts") (ECF No. 42 at 5–6) ¶ 1.)

Jesik then allegedly "got upset" with Berry's verbal resistance to his attempt to search Berry's car.  (Plaintiff's Additional Facts ¶ 2.)  In an "instant," Jesik came around the car, spun Berry around to push her up against the car, bent her fingers backwards (causing her to exclaim, "Jesus Christ, that hurts"), hit her head against the car three or four times, and put his knee or hip into her lower back, all as part of his efforts to handcuff Berry.  (*Id.* ¶¶ 2, 4; ECF No. 37-4 at 131:20–132:22; ECF No. 42-1 at 117:25.) Beauvais assisted in the handcuffing by twisting one of Berry's arms backwards. (Plaintiff's Additional Facts ¶ 4.)

Porco stated that he "watched one [of the officers present] shake his head" in a display of astonishment or disgust with this turn of events.  (ECF No. 42-2 at 53:7–13.) Porco does not specify which officer this was, although it likely could only have been

Garcia, given that Jesik and Beauvais were struggling with Berry at the time and there is no evidence of any other police officers at the scene.

At this point, Porco spoke directly to Beauvais, stating, "Listen, man, that is uncool, you are hurting her, her arms don't bend like that." (*Id*. ¶ 5.)  In response, Beauvais "backed four or five steps away," leaving only Jesik in physical contact with Berry.  (*Id*.)  Jesik then brought Berry to a nearby sidewalk by grabbing the handcuffs chain and lifting Berry off the ground, carrying her to the sidewalk, setting her on her feet, and yanking on the handcuffs chain such that Berry's feet came out from under her and she landed on her buttocks.  (Plaintiff's Additional Facts ¶ 2; ECF No. 37-4 at 123:15–21; ECF No. 37-5 at 54:3–17.)

Garcia remained next to Porco throughout these events.  (ECF No. 37-4 at 122:12–13.)

## C.   Defendants' Account of Berry's Detention and Treatment

Not surprisingly, Defendants tell a much less violent story.  According to Defendants, Jesik never began peeking or reaching into Berry's car.  Rather, Berry "advised the officers [that] she was attempting to get something from her car; they would not let her do that, they told her not to do that, and she reached in anyway." (Defendants' Facts ¶ 9.)  Jesik and Beauvais then handcuffed Berry, with Beauvais assisting Jesik.  (Defendants' Facts ¶ 10; Plaintiff's Response ¶ 10a.)  Jesik and Beauvais say they did this because Berry's agitated comments were interfering with Garcia's questioning of Porco, and because Berry's alleged attempt to reach into her car created a safety issue.  (Defendants' Facts ¶ 10.)  Jesik and Beauvais deny Berry's details about the physical force applied to Berry, claiming instead that they never

5

employed any sort of "joint lock or wrist lock, or any type of . . . formal control hold." (Defendants' Response Concerning Additional Disputed Facts ("Defendants' Response") (ECF No. 43 at 2–3) ¶ 2 (internal quotation marks omitted).)

Beauvais "stepped away from" Berry "[a]fter assisting Detective Jesik in handcuffing [Berry]." (Defendants' Facts ¶ 10.) Defendants say that Berry then "walked under her own power" to the sidewalk and that Jesik "did not forcefully place [Berry] on the ground." (Defendants' Response ¶ 2.)

**D.     The End of the Encounter**

No evidence submitted to the Court establishes how long it took for Berry to be handcuffed and brought to the sidewalk. Based on his experience with similar situations, Beauvais estimated, "Seconds. Under a minute or so," but he had no specific memory as to this event. (ECF No. 37-2 at 55:18–56:2.)

Regardless, the parties agree that the incident ended when the officers learned from dispatch that neither Berry nor Porco had any outstanding enforceable warrants, at which point Berry and Porco were released. (Defendants' Facts ¶ 11; Plaintiff's Response ¶ 11.) Jesik says that the time between placing Berry on the sidewalk and receiving clearance from dispatch was "a few minutes." (ECF 37-3 at 36:8–19.) Berry says she was on the sidewalk for at least "two or three minutes." (ECF No. 37-4 at 126:16–127:8.) As for the length of the entire incident, Berry said "[i]t felt like forever. I would say start to finish maybe 10, 15 minutes." (ECF No. 37-4 at 128:22–24.)

## III.  ANALYSIS

Asserting a single cause of action under 42 U.S.C. § 1983, Berry alleges that

being handcuffed was an unreasonable seizure in violation of the Fourth Amendment. (ECF No. 1 ¶ 62.)  Berry further alleges that the force used against her was excessive under the circumstances, also in violation of the Fourth Amendment.  (*Id*. ¶ 66.)

Notably, although Jesik is the officer accused of effecting the seizure and applying excessive force, Jesik is not a defendant here.  Berry did not name Jesik as a defendant in her complaint (*see* ECF No. 1), and when she later attempted to add him, the Court determined that she had not done so in time (ECF No. 29).

Berry thus proceeds against Garcia and Beauvais alone.  Against Garcia, Berry asserts that he did not directly seize her or apply force to her, but he had a duty to intervene to stop Jesik.  (ECF No. 42 at 6.)  *See, e.g.*, *Vondrak v. City of Las Cruces*, 535 F.3d 1198, 1210 (10th Cir. 2008) ("all law enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence" (internal quotation marks omitted)). Against Beauvais, Berry likewise asserts that he had a duty to intervene, which was all the more acute since Beauvais was right next to Jesik, assisting his efforts to handcuff Berry.  (ECF No. 42 at 12–13.)[1]

In their summary judgment motion, Garcia and Beauvais do not argue that Jesik's actions were reasonable even under Berry's version of events.  The Court therefore treats the unreasonableness of Jesik's alleged conduct as conceded for summary judgment purposes.  *See* Fed. R. Civ. P. 56(c)(1)(A) (permitting "stipulations . . . made for purposes of the [summary judgment] motion only").  The question, then, is

---

[1] Berry does not argue that Beauvais's physical contact with her during the handcuffing process amounted to excessive force.

whether Garcia or Beauvais (or both) had a duty to intervene to stop Jesik, either in his seizure of Berry (*i.e.*, handcuffing her) or in his use of force.

Garcia and Beauvais argue that they had no realistic opportunity to intervene. (ECF No. 37 at 8–9, 15–16.)  This is a recognized part of any duty-to-intervene analysis: "In order for liability to attach, there must have been a realistic opportunity to intervene to prevent the harm from occurring."  *Vondrak*, 535 F.3d at 1210.  Because each officer faced different circumstances during Berry's encounter with Jesik, the Court will analyze each officer's opportunity to intervene separately.

**A.      Intervening in Berry's Detention**

       1.      <u>Garcia's Opportunity to Intervene</u>

Berry argues that Garcia should have intervened to prevent her seizure (*i.e.*, her placement in handcuffs).  Berry's theory in this regard is not specifically that Garcia should have done something to stop Jesik from handcuffing her, but that Garcia should have stopped Jesik from reaching into Berry's car, which would supposedly have defused the situation and prevented the entire sequence of events.  (ECF No. 42 at 9–10.)

The Court finds that Berry has not presented evidence from which a reasonable jury could conclude that Garcia had a realistic opportunity to intervene to stop Jesik's alleged reaching into Berry's car.  Although Berry says that Garcia had "ample opportunity to intervene," she only cites deposition testimony from Porco stating that "any one of those cops could have stopped that."  (*Id*. at 10 & n.5 (citing Plaintiff's Response ¶ 12d).)  This testimony receives detailed treatment below.  *See* Section

III.B.1.b.  As discussed there, it is evident that "could have stopped that" refers to the violence Jesik allegedly inflicted on Berry, not to Jesik's allegedly unlawful reach into Berry's car.  Further, Berry says that Jesik was on the passenger side of her car at that time, which was the opposite side of the car from where Garcia was standing.  (ECF No. 42-1 at 112:18–24.)  In other words, Garcia was standing approximately ten feet away from the car itself and Jesik was further away still, on the far side of the car.  Thus, Berry offers no evidence supporting her claim that Garcia had time or ability to intervene in Jesik's alleged reaching.  Summary judgment will be granted to Garcia on this theory.

2.      Beauvais's Opportunity to Intervene

Berry's response to Defendants' summary judgment motion does not argue that Beauvais had an opportunity to intervene in Jesik's alleged reaching into Berry's car.  To the extent Berry unintentionally omitted such an argument, the Court would reject it for the reasons just explained with respect to Garcia.  The parties agree that Beauvais was standing next to Garcia at that time (Defendants' Facts ¶ 5; Plaintiff's Response ¶ 5), meaning Beauvais was in substantially the same situation as Garcia at the time Jesik allegedly reached into Berry's car.  Beauvais is therefore entitled to summary judgment on the question of whether he should have intervened to stop Jesik at that point.[2]

---

[2] Berry does not argue that Garcia's or Beauvais's duty to intervene in her allegedly unlawful seizure extended to the time period when Berry was sitting handcuffed on the sidewalk, *i.e.*, that Garcia or Beauvais should have insisted on Berry's release from handcuffs during the time that the officers were checking for outstanding warrants against her.

9

**B.**     **Intervening in Jesik's Use of Force**

1.     Garcia's Opportunity to Intervene

As described above, Berry alleges that Jesik applied excessive force when he quickly came around her car, pinned her body against it, twisted her fingers, hit her head against the car, picked her up by the handcuff chains, and set her down on the sidewalk in a manner that caused her to strike the sidewalk with her buttocks.  The parties dispute whether Garcia had a realistic opportunity to intervene in any of this, and their dispute turns on (a) whether Garcia was aware of Jesik's actions and (b) whether Garcia had sufficient time to intervene.[3]  The Court will discuss both questions in turn.

a.     *Awareness*

Garcia says that his back was turned to Jesik and Berry, that his attention was solely on Porco, and that he did not see Jesik's alleged attack on Berry.  (ECF No. 37-1 at 17:14–16, 21:16–22:13.)  Porco, by contrast, testified that he "watched one [of the officers present] shake his head" at what Jesik did to Berry, likely referring to Garcia. (ECF No. 42-2 at 53:7–13.)  Further, after seeing Jesik take Berry to the sidewalk, Porco says that he "was looking at this young guy [Garcia], like, 'Dude, I have been really cool with you.  I haven't given you any trouble.  And you are going to allow that, really?'  I said, 'You people are paid to protect us.  Who protects us from you?'  [¶]  And that's when [Garcia] said, 'Shut your mouth.'"  (ECF No. 42-2 at 52:8–13.)  Porco's testimony, if believed by a jury, suggests that Garcia indeed observed Jesik's actions.

---

[3] Defendants do not argue that intervention itself might have posed an officer safety concern, *e.g.*, that Garcia feared turning his back on Porco (an armed robbery suspect at the time) while attempting to intervene with Jesik.

A dispute of material fact therefore exists about whether Garcia observed what Jesik was doing.  Summary judgment may not be granted on this point.

> b.   *Time to Intervene*

Whether an officer had a realistic opportunity to intervene often turns on whether the officer had time to intervene.  *See, e.g.*, *Fogarty v. Gallegos*, 523 F.3d 1147, 1164 (10th Cir. 2008) (an incident "lasting between three and five minutes" was long enough to establish opportunity to intervene); *Thompson v. Boggs*, 33 F.3d 847, 857 (7th Cir. 1994) ("Officer Noble did not have an opportunity to [intervene] . . . because Officer Boggs' restraining and controlling of Thompson was accomplished before Officer Noble even had an opportunity to get out of his squad car"); *Gaudreault v. Municipality of Salem*, 923 F.2d 203, 207 (1st Cir. 1990) (no realistic opportunity where "attack came quickly and was over in a matter of seconds").  "Whether an officer had sufficient time to intercede or was capable of preventing the harm being caused by another officer is an issue of fact for the jury unless, considering all the evidence, a reasonable jury could not possibly conclude otherwise."  *Vondrak*, 535 F.3d at 1210.

The parties have pointed the Court to no clear evidence of how quickly the alleged excessive force unfolded.  In response to Defendants' argument that Garcia had insufficient time, Berry points only to a portion of Porco's deposition testimony where he states that Garcia "could have stopped it.  He seemed like the only one, regardless of what he was doing with me, he—any one of those cops could have stopped that."  (ECF No. 42-2 at 52:20–22.)  In context, however, it is not clear that Porco was testifying about elapsed time:

11

Q.      And when [Jesik] put [Berry] over there by the sidewalk, was that on the opposite side of her car?

A.      Yes, ma'am.

Q.      The passenger side?

A.      Yes.  And the last thing that I saw violent-wise was when [Jesik] slammed [Berry to the sidewalk], her feet came up, and I couldn't see my mother anymore, and that's when I was looking at this young guy [Garcia], like, "Dude, I have been really cool with you.  I haven't given you any trouble.  And you are going to allow that, really?"  I said, "You people are paid to protect us.  Who protects us from you?"

        And that's when [Garcia] said, "Shut your mouth."

        I said, "Take the cuffs off.  All you guys are looking to do is beat somebody. You won't beat my mother.  I will give you a run for your money."  And that's when that dude [Garcia] stepped in my way and was trying to calm me down.

Q.      The first officer that had approached you?

A.      Yeah.  He was still just trying to be cool, but he could have stopped it.  He seemed like the only one, regardless of what he was doing with me, he—any one of those cops could have stopped that.

(ECF No. 42-2 at 52:2–22.)

        In light of the questions leading up to "he could have stopped it," it appears Porco was giving an opinion about the situation generally, not about elapsed time in particular.  Nonetheless, the Court must resolve factual ambiguities in Berry's favor. *Houston*, 817 F.2d at 85.  This statement can reasonably be interpreted as implying that sufficient time existed to allow Garcia to intervene.  Accordingly, a material dispute of fact exists about whether Garcia had a realistic opportunity to intervene.  Summary

judgment as to Garcia must be denied on this issue.

       2.    <u>Beauvais's Opportunity to Intervene</u>

The analysis with respect to Beauvais is simpler. "[I]t is conceded that [Berry] has submitted facts to indicate that Officer Beauvais was in proximity of [Berry] at the time of the handcuffing" (ECF No. 43 at 9), and Beauvais admits that he assisted Jesik in handcuffing Berry (Defendants' Facts ¶ 10). Thus, there is sufficient evidence from which a jury could conclude that Beauvais was aware of Jesik's actions and had time to intervene, at least in part. It is possible, for example, that Beauvais had time to intervene in Jesik's alleged rough treatment of Berry while she was pinned against her car, but that Jesik's alleged carrying of Berry by the handcuffs chain took place so quickly and unexpectedly that Beauvais could not have realistically done anything before it was over. But that is a jury question, and summary judgment as to Beauvais on this issue must be denied.

**C.    Qualified Immunity**

Lastly, Garcia (although not Beauvais) asserts that he deserves qualified immunity. "The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (internal quotation marks omitted). "When a defendant pleads qualified immunity, the plaintiff has the heavy burden of establishing: (1) that the defendant's actions violated a federal constitutional or statutory right; and (2) that the right violated was clearly established at the time of the defendant's actions."

*PJ ex rel. Jensen v. Wagner*, 603 F.3d 1182, 1196 (10th Cir. 2010) (internal quotation marks omitted).

The right to be free from excessive force, and to have a police officer intervene in another's use of excessive force, is clearly established. *Vondrak*, 535 F.3d at 1210. Garcia does not argue otherwise. Rather, Garcia's qualified immunity argument is identical to his argument that he had no realistic opportunity to intervene. (ECF No. 37 at 10–11.) For the reasons already explained in that context, if a jury credits Berry's story over Garcia's, a reasonable jury could conclude that Garcia had a realistic opportunity to intervene. *See* Section III.B.1, *supra*. Thus, Garcia would not be entitled to qualified immunity. *Cf. Vondrak*, 535 F.3d at 1210 ("given [the defendant's] close proximity to the initial handcuffing, and his presence immediately thereafter, the district court was correct in denying qualified immunity to [the defendant] on the excessive force claim").

## IV.  CONCLUSION

For the reasons set forth above, the Court ORDERS as follows:

1. Defendants' Motion for Summary Judgment (ECF No. 37) is GRANTED IN PART and DENIED IN PART;

2. Summary judgment is granted in favor of Defendants on Berry's claim that Defendants should have intervened to stop her allegedly unlawful seizure;

3. Summary judgment is denied on Berry's claim that Defendants should have intervened to stop the alleged excessive force applied by Jesik; and

14

4.      This matter REMAINS SET for a five-day jury trial beginning on September 21,

2015, with a Final Trial Preparation Conference at 10:00 a.m. on September 4,

2015.

Dated this 30th day of March, 2015.

BY THE COURT:

William J. Martinez
United States District Judge