**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Civil Action No. 13-cv-2647-WJM-CBS

THERESA BERRY,

      Plaintiff,

v.

BRANDON BEAUVAIS and
CHAD GARCIA,

      Defendants.

---

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS'
MOTION *IN LIMINE***

---

Theresa Berry ("Berry" or "Plaintiff") sues two Pueblo police officers, Brandon
Beauvais and Chad Garcia (together, "Defendants"), under 42 U.S.C. § 1983, claiming
that Beauvais and Garcia had a duty to intervene to prevent a third officer (Detective
Stephen Jesik, not a defendant here) from applying excessive force to Berry during an
encounter at a Pueblo convenience store.  (*See* ECF Nos. 1, 51.)  Defendants now
move *in limine* to exclude various matters of expected testimony from Berry and from
one of her witnesses.  (ECF No. 54.)  For the reasons explained below, Defendants'
motion is granted in part and denied in part.

## I.  ANALYSIS

### A.  Testimony of Janice Schultz

Berry intends to call her psychotherapist, Janice Schultz, as a fact witness,
rather than as an expert witness.  (ECF No. 46 at 5–6.)  Berry had a therapy session

with Schultz in the hours immediately following Berry's encounter with Defendants, and

has had several more therapy sessions since.  Berry says that Schultz will testify as

follows:

1.  "that she is Plaintiff's therapist";

2.  "her observations of Plaintiff on the date of the incident";

3.  "her recommendation that Plaintiff go to the emergency room";

4.  "Plaintiff's 'state of mind' on the date of the incident and in

subsequent visits";

5.  "statements Plaintiff made to her about what happened [*i.e.*,

between her and Defendants]";

6.  "a lay opinion as to the effect of the incident on Plaintiff."

(ECF No. 71 at 1–2.)  Defendants object to items 3–6.  The Court will address each in

turn.

1.  <u>Recommendation to Go to the Emergency Room</u>

Given that Schultz has never been disclosed as an expert witness, Defendants

argue that she should be "unable to testify that she recommended that Plaintiff seek

further medical treatment as such recommendation would be inseparable from her

position as an expert."  (ECF No. 54 at 4–5.)  On this record, however, the Court cannot

sustain this objection.  Laypersons routinely encourage each other to seek medical

treatment, and so the Court cannot say that such encouragement is necessarily expert

testimony.  On the other hand, if Schultz recommended emergency room treatment

specifically because of some sort of worry or diagnosis stemming from Schultz's

training as a therapist, the testimony may be objectionable.  The Court therefore

2

overrules this objection without prejudice.

2.     Berry's State of Mind on the Date of the Incident and Subsequently

Defendants contend that testimony about Berry's state of mind is impermissible for a lay witness.  (ECF No. 54 at 4.)  As a categorical proposition, Defendants are incorrect.  A witness with sufficient opportunity to observe an individual can make a lay judgment about that individual's state of mind (*e.g.*, concluding that the individual was agitated because she could not stop fidgeting and had difficulty concentrating).

However, Schultz is a specially trained observer of her patients' state of mind. Indeed, that is a core function of her job.  A risk therefore exists that Schultz's specialized training will inform her testimony, thereby converting her testimony into impermissible expert testimony.  The Court cannot anticipate precisely how Schultz will testify, so Defendants' objection is overruled without prejudice.  The Court nonetheless provides the following guidance.

To the extent Schultz testifies regarding indicators of Berry's mental state that would be outwardly visible to an untrained layperson, and to the extent Schultz uses laypersons' language to describe those indicators, Schultz's testimony is likely admissible.  But, to the extent Schultz testifies regarding more subtle indicators, or testifies using technical terms (*e.g.*, "affect," "dysthymic," etc.), such testimony is likely inadmissible.

3.     Berry's Statements to Schultz About How Defendants Allegedly Treated Berry

Berry anticipates that Defendants will attempt to impeach her account of the incident, and she therefore intends to have Schultz testify as to the version of events

3

allegedly recounted to her by Berry in the hours after the incident.  (ECF No. 71 at 2.)

Berry specifically asserts a newly added portion of the Federal Rules of Evidence

regarding prior consistent statements.  Before December 1, 2014, a prior consistent

statement could be admitted for the truth of the matter asserted if it was "consistent with

the declarant's testimony and is offered to rebut an express or implied the charge that

the declarant recently fabricated it or acted from a recent improper influence or motive

in so testifying."  Fed. R. Evid. 801(d)(1)(B) (2014).  Effective December 1, 2014,

however, subparagraph (B) was split into two clauses: "(i) to rebut an express or implied

charge that the declarant recently fabricated it or acted from a recent improper

influence or motive in so testifying; or (ii) to rehabilitate the declarant's credibility as a

witness when attacked on another ground[.]"  Fed. R. Evid. 801(d)(1)(B) (2015).  Berry

invokes clause (ii) as justification to admit Schultz's testimony of what Berry said to

Schultz on the day of the incident.  (ECF No. 71 at 2–3.)

Understanding this new clause requires understanding the overall purpose of

Rule 801(d)(1)(B).  From the beginning, this Rule was not intended to ensure

admissibility of prior consistent statements.  Such statements had "traditionally . . . been

admissible to rebut charges of recent fabrication or improper influence or motive."  Fed.

R. Evid. 801, Committee Commentary to 1972 Proposed Rules.  Rule 801(d)(1)(B) was

not intended to change that.  *See Tome v. United States*, 513 U.S. 150, 156–57 (1995).

Rather, the purpose of Rule 801(d)(1)(B) was to expand the use of such statements,

admitting them not only as pure rehabilitative evidence but also as substantive evidence

—*i.e.*, evidence of the truth of the matter asserted.  *Id.*

According to the committee commentary on the most recent amendment, clause

4

(ii) addresses prior consistent statements offered for purposes other than to rebut a charge of recent fabrication, such as "consistent statements that are probative to explain what otherwise appears to be an inconsistency in the witness's testimony" and "consistent statements that would be probative to rebut a charge of faulty memory." Fed. R. Evid. 801, Committee Commentary to 2014 Amendments.  The committee saw that the Rule, as originally written, left these sorts of prior consistent statements "potentially admissible only for the limited purpose of rehabilitating a witness's credibility," not as substantive evidence.  *Id.*  Clause (ii) clarifies that such statements may be treated as substantive evidence.  Nonetheless, "[a]s before, prior consistent statements under the amendment may be brought before the factfinder only if they properly rehabilitate a witness whose credibility has been attacked."  *Id.*

Berry does not explain precisely what sort of impeachment she expects from Defendants that would open the door to admitting Schultz's testimony under clause (ii) for the truth of the matter asserted.  She gives no indication that her testimony may be attacked as inconsistent or based on faulty memory.  But assuming such an attack takes place, clause (ii) would likely allow Schultz's testimony both for its rehabilitative effect and for the truth of the matter asserted.

Berry does not defend Schultz's expected testimony under clause (i)—the Rule's original language admitting prior consistent statements "to rebut an express or implied charge that the declarant recently fabricated it or acted from a recent improper influence or motive"—but Defendants argue that clause (i) cannot apply because "the prior statement must antedate the improper influence or motive to fabricate" and Berry's statements to Schultz were "subject to the same motive to portray herself as a victim to

her therapist in order to cover her own bad behavior." (ECF No. 54 at 6.) Given Berry's

failure to respond to this argument, the Court deems it conceded that Schultz's retelling

of Berry's account of the incident may not be admitted for the truth of the matter

asserted under clause (i). *Cf. Zinna v. Bd. of Cnty. Comm'rs of the Cnty. of Jefferson*,

250 F.R.D. 527, 529 (D. Colo. 2007) (party deemed to have confessed a motion by

failing to respond).

Accordingly, Defendants' objection is sustained with respect to Rule

801(d)(1)(B)(i) but overruled with respect to Rule 801(d)(1)(B)(ii).

4.    Lay Opinion About the Effect of the Incident on Berry

The Court sustains Defendants' objection to Schultz offering a "lay opinion as to

the effect of the incident on Plaintiff." (ECF No. 71 at 1–2.) The Court presumes that

Berry wants Schultz to offer such an opinion to support Berry's claim of ongoing mental

and emotional suffering allegedly caused by her encounter with Defendants. But there

will already be a difficult line to draw regarding Schultz's testimony about Berry's state

of mind. (*See* Part I.A.2, *supra*.) Given Schultz's professional training and the fact that

her professional training is precisely why she has a relationship with Berry, the Court

believes this line will be essentially impossible to discern if Schultz is allowed to offer an

opinion about how Berry's encounter with police has affected her mentally and

emotionally over the long term. Accordingly, Schultz will not be permitted to offer a "lay

opinion as to the effect of the incident on Plaintiff." (ECF No. 71 at 1–2.)

5.    Defendants' Request for a Jury Instruction

Defendants request that the Court "instruct the jury that Ms. Schultz has not

been called as an expert witness and that her testimony should not be given any more

or less weight than any other witness." (ECF No. 54 at 5.) The Court is willing to entertain an instruction if submitted promptly, as set forth below.

## B.    Medical Evidence

Defendants requested that Berry be forbidden to testify "regarding any medical diagnosis of injury, causation attributed to the incident, and the amount of medical expenses attributable to any conduct of a Defendant" because: (1) these matters require expert testimony, of which Berry has none; and (2) testimony about things her doctors may have said to her would be hearsay. Berry concedes that she "may not testify as to what [medical] providers told her about her condition," but "she can testify that she saw certain providers for treatment since those matters are within her personal knowledge, and she can testify as to her own pain and suffering since that is based on her 'perceptions and feelings.'" (ECF No. 71 at 3.)

On this record, it is simply not clear what Berry intends to say about her own medical condition or about medical bills. Thus, the Court overrules Defendants' objection without prejudice but provides the following guidance.

Courts have allowed lay testimony about medical causation in cases where causation is fairly obvious. For example, in a prison brutality case, the Seventh Circuit permitted a prisoner to testify about the connection between being beaten by a prison guard and the pain he subsequently felt: "No expert testimony is required to assist jurors in determining the cause of injuries that are within their common experiences or observations. Here, the cause of [the prisoner's] pain was perfectly clear: [the guard] beat him." *Hendrickson v. Cooper*, 589 F.3d 887, 892 (7th Cir. 2009) (citation omitted).

However, various courts have noted that whether a stressful incident caused a

7

flare-up in a preexisting condition is not within a jury's competence to judge without

expert causation testimony.  *See, e.g.*, *Xodus v. The Wackenhut Corp.*, 626 F. Supp.

2d 861, 865 (N.D. Ill. 2009); *Kiesz v. Gen. Parts, Inc.*, 2007 WL 963489, at *15 (D.S.D.

Mar. 28, 2007).  Even apart from the preexisting condition context, medical causation is

usually a matter for expert testimony.  *See, e.g.*, *Gidley v. Oliveri*, 641 F. Supp. 2d 92,

106 (D.N.H. 2009); *Hargis v. Atl. Cnty. Justice Facility*, 2014 WL 1713461, at *7 (D.N.J.

Apr. 28, 2014); *Henry v. O'Charley's Inc.*, 2013 WL 786417, at *7 (W.D. La. Mar. 1,

2013); *cf. Montoya v. Sheldon*, 286 F.R.D. 602, 614 (D.N.M. 2012) ("A treating

physician's opinions regarding diagnosis of a medical condition is almost always expert

testimony, because diagnosis requires judgment based on scientific, technical, or

specialized knowledge in almost every case.").

Thus, to the extent Berry confines her testimony to acute injuries allegedly

attributable to Defendants, and the treatment she received for those injuries, her

testimony is likely admissible.  But, to the extent Berry attributes ongoing injuries and

expenses, or aggravation of preexisting injuries, to Defendants' conduct, the Court will

much more closely scrutinize her testimony to ensure that it does not cross the line into

matters requiring an expert opinion.

## C.    Evidence or Argument of Illegal or Unconstitutional Seizure

This Court ruled at summary judgment that Defendants could not be held liable

for Berry's original handcuffing, which she argued was an unconstitutional seizure.

(ECF No. 51 at 8–9.)  Defendants therefore request that the Court exclude evidence

and argument about the seizure itself as either irrelevant or at least inadmissible under

8

Rule 403.  (ECF No. 54 at 8.)  Berry responds that this Court only ruled that Defendants could not be liable for an unconstitutional seizure, not that an unconstitutional seizure never happened.  (ECF No. 71 at 4.)  Berry also argues that the handcuffing is inextricably intertwined with the alleged use of force.  (*Id.*)

The Court agrees with Berry that evidence of the handcuffing must necessarily come in to tell the story of what allegedly happened to Berry that day.  Moreover, whether Detective Jesik too hastily applied handcuffs is probative to the question of whether he subsequently applied excessive force, which remains a matter in dispute between the parties.  Accordingly, Defendants' objections in this regard are overruled.

## II.  CONCLUSION

For the reasons set forth above, the Court ORDERS as follows:

1.    Defendants' Motion *in Limine* (ECF No. 54) is GRANTED IN PART and DENIED IN PART as stated above.

2.    If Defendants seek a special instruction regarding the testimony of Janice Schultz, Defendants shall submit a proposed instruction no later than noon on September 14, 2015.  Defendants shall first confer with Berry to see if a stipulated instruction is possible.  If Defendants ultimately file a disputed instruction, Berry shall file a response no later than noon on September 15, 2015.

Dated this 9th day of September, 2015.

BY THE COURT:

_____

William J. Martinez
United States District Judge